## THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Edward Reeves | * | Civil Action No.: |
| Plaintiff Pro Se | * | |
| vs. | * | |
| CITY OF PILADELPHIA; | * | |
| POLICE OFFICER DMITRY SOROKA, | * | |
| BADGE NUMBER 6104; | * | |
| POLICE OFFICER OWEN MCQUIRE, | * | |
| BADGE NUMBER 3065; | * | |
| POLICE OFFICER JOHN DOE 1, | * | |
| BADGE NUMBER : | * | |
| POLICE OFFICER JOHN DOE 2, | * | |
| BADGE NUMBER : | * | FILED |
| POLICE SERGEANT JOHN DOE 3, | * | |
| BADGE NUMBER : | * | AUG 1 2 2010 |
| POLICE OFFICER JANE DOE 4, | * | |
| BADGE NUMBER : | * | MICHAEL E. KUNZ, Clerk |
| Individually and as Police Officers for | * | By_____ Dep. Clerk |
| City of Philadelphia | * | |
| C/o Law Department | * | |
| 1515 Arch Street | * | |
| Philadelphia, PA 19102 | * | |
| Defendants | *JURY TRIAL DEMANDED | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Edward V. Reeves, attorney pro se, sets forth the following in support of this action:

### JURISDICTION :

1. This action arises, in part, pursuant to 42 U.S.C.A. §1983. Jurisdiction is based upon 28 U.S.C.A. §1331 and 1343 (1), (3), (4) and the aforementioned statutory provision. Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a) to hear and adjudicate state law claims.

### PARTIES:

2. Plaintiff Edward V. Reeves is an individual attorney duly admitted to practice law in Pennsylvania on December 12, 1992 and gainfully employed as a solo practitioner of law since August 17, 2000 residing

1

at 943 Wheatsheaf Lane, Lower Southampton, PA 19053 and was a political candidate for supervisor of Lower Southampton Township on the official ballot in the general election conducted November 3, 2009.

3. Defendant City of Philadelphia is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the Philadelphia Police Department which employs Defendant Police Officers named here.

4. Defendant Police Officers named here are police officers for the Philadelphia Police Department acting under color of state law and are being sued in their individual capacities.

## FACTUAL ALLEGATIONS:

5. On August 15, 2009, Plaintiff was visiting a friend, Resident Owner, at her residence located at 1800 S. 13TH, Philadelphia, PA (situated on southwest corner of 13th & Moore Streets) when a Philadelphia Fire Department Fire Truck Engine #10 circled her block one time with its sirens and emergency lights activated and then stopped outside her residence at the intersection of 13th & Moore Streets with numerous firemen exiting the fire truck and searching the area contiguous to Resident Owner's residence at 2:00am.

6. Upon hearing the emergency sirens and commotion outside the residence, Resident Owner and Plaintiff opened her front door facing the intersection of 13th & Moore Streets and fireman immediately advised Resident Owner and Plaintiff that they were responding to an anonymous call for a medical emergency outside her residence and began questioning Resident Owner and Plaintiff about their activities there that evening. Upon the interrogating fireman's demand, Resident Owner provided the fireman with her PA Driver's License indicating her name and residence there, she further advised the interrogating fireman that she owned the property and used it as a family residence, that there were no apartments or renters there, that her three daughters and their dog were asleep upstairs in the residence, that she had been home all evening and that there was no medical emergency inside her residence.

2

7. The interrogating fireman then demanded that Plaintiff provide his name, address and cell phone number to the fireman for his report.

8. Plaintiff repeatedly declined to volunteer his personally identifiable information to the fireman upon the interrogating fireman's acknowledgment there was no medical emergency at the location, that the anonymous call was unfounded, that Resident Owner fully cooperated and provided sufficient information for his report, that there was no need for further investigation and whereupon, the firemen left the scene.

9. Resident Owner and Plaintiff went back inside her residence and approximately 20-30 minutes later they heard sirens and saw lights flashing outside and the Defendant Police Officers began banging on Resident Owner's front door facing the intersection of 13th & Moore Streets whereupon Resident Owner and Plaintiff again opened her front door facing the intersection of 13th & Moore Streets and the Defendant Police Officers immediately began interrogating Resident Owner and Plaintiff about their activities inside the residence that evening pursuant to an anonymous call they received indicating a woman was being assaulted with a weapon and bleeding from her head inside the residence.

10. Resident Owner provided the Defendant Police Officers with her PA Driver's License indicating her name and residence there, advised the Defendant Police Officers she owned the property and used it as a family residence, that there were no apartments or renters there, that her three daughters and their dog were asleep upstairs in the residence, that she had been home all evening and that no assault took place inside her residence and that there was no medical emergency of any kind inside her residence. Resident Owner and Plaintiff advised the Defendant Police Officers the anonymous call was unfounded and a mistake, that the Philadelphia Fire Department had been at the location 20-30 minutes earlier for a similar call but left the scene after their investigation established that no medical emergency existed at Resident Owner's residence.

11. The Defendant Police Officers were searching the curtilage of Resident Owner's residence while Resident Owner and Plaintiff continued to respond and fully cooperate to the interrogation from two Defendant Police Officers at the front door facing the intersection of 13th & Moore Streets and Resident Owner repeatedly refused to allow the Defendant Police Officers to search her residence because there was

3

no emergency inside and Resident Owner did not want her three daughters and their dog, who were asleep upstairs, to be abruptly awakened by armed Defendant Police Officers searching her family residence.

12. Defendant Police Officer Jane Doe left the scene but the five other Defendant Police Officers remained interrogating Resident Owner and Plaintiff demanding her consent to enter and search Resident Owner's residence whereupon Resident Owner and Plaintiff observed Defendant Police Officer John Doe I on the third step of the side entrance to Resident Owner's residence with his gun drawn exclaiming that the door was slightly open and then he kicked that door completely open.

13. Plaintiff and Resident Owner went to the railing of the side entrance to Resident Owner's residence and Plaintiff advised Defendant Police Officer John Doe I that it was illegal for him to enter Resident Owner's family residence without Resident Owner's voluntary consent.

14. Defendant Police Officer John Doe I lunged downward toward Plaintiff from the third step of the side entrance to Resident Owner's residence and screamed in Plaintiff's face "what the f--- are you looking at, I will kick your f------g ass".

15. Immediately thereafter, Resident Owner advised the Defendant Police Officers is was okay for them to search her residence and Defendant Police Sergeant John Doe III instantly ordered Plaintiff be arrested for disorderly conduct.

16. Defendant Police Officer John Doe I holstered his gun, came down the steps onto the sidewalk where Plaintiff stood, grabbed Plaintiff by both shoulders, spinning him face first toward the wall, forcing Plaintiff's arms behind his back, tightly handcuffing Plaintiff's hands together, and hollering into Plaintiff's ear "You don't have any needles in your pockets do you" while he began to search Plaintiff's clothing and body for weapons and/or illegal contraband.

17. After the search, Defendant Police Officer Owen McQuire took Plaintiff to his patrol car and while placing Plaintiff in the back seat he suggested to Plaintiff "you are drunk aren't you".

18. Plaintiff requested that Defendant Police Officer Owen McQuire allow the Resident Owner to enter her residence and retrieve Plaintiff's car keys, cell phone, wallet and eye glasses but Plaintiff's request was denied.

4

19. Defendant Police Officers Dmitry Soroka and Owen McQuire drove Plaintiff to the police station while Police Officers John Doe I and John Doe II searched Resident Owner's residence and Defendant Police Sergeant John Doe III restrained Resident Owner and one daughter who awoke and came outside her residence during the commotion, during the search of their residence.

20. Plaintiff was taken inside the police station from a parking lot behind the police station whereupon Defendant Police Officers Dmitry Soroka and Owen McQuire handcuffed Plaintiff to a small chair in a narrow hallway where Plaintiff remained completely still and silent, staring directly at the floor avoiding eye contact with Defendant Police Officers for two-three hours.

21. Upon being charged with disorderly conduct and then being released, Plaintiff asked Defendant Police Officers Dmitry Soroka and Owen McQuire to drive him back to Resident Owner's residence whereupon Defendant Police Officers Dmitry Soroka and Owen McQuire opened the door and pointed out to the parking lot where Plaintiff had entered the police station and told Plaintiff "you can walk".

22. Plaintiff then wandered around the streets of South Philadelphia for another two-three hours as a result of being lost without his eye glasses to see, no cell phone to call Resident Owner to pick him up and no money to hail a cab.

23. Plaintiff arrived back at Resident Owner's residence between 8-9am and was advised by Resident Owner's daughter that Defendant Police Sergeant John Doe III indicated to her that the Defendant Police Officers had made a mistake about the location of the alleged assault and battery of a woman with a weapon and that Defendant Police Sergeant John Doe III attempted to get Resident Owner's daughter to say Plaintiff had been drinking and was physically abusing her mother.

24. Two days after Plaintiff's arrest and being criminally charged with disorderly conduct, Plaintiff was forced to appear at Philadelphia Municipal Court at 8:30am on August 17, 2009 to plead not guilty to the criminal charge of disorderly conduct, to retain a criminal lawyer to defend Plaintiff against the criminal charge of disorderly conduct and to subpoena the Resident Owner and her daughter to Plaintiff's trial at Philadelphia Municipal Court scheduled for 8:30am on September 23, 2009.

25. Soon thereafter, Plaintiff advised the chairman of the Lower Southampton Township political party

5

endorsing Plaintiff for supervisor in the general election on November 3, 2009 that he had been arrested for disorderly conduct and would withdraw from the campaign but the chairman advised Plaintiff is was too late to withdrawn his name from the ballot for the general election on November 3, 2009 and further advised Plaintiff would not be endorsed for district justice of Lower Southampton Township as Plaintiff had requested in 2011.

26. On September 23, 2009 Defendant Police Officer Dmitry Soroka appeared and testified against Plaintiff pursuant to the charge of disorderly conduct and at the conclusion of the Commonwealth's case-in-chief, Plaintiff's defense counsel made an oral motion to dismiss the criminal charge of disorderly conduct against Plaintiff for insufficient evidence that was granted by the Honorable Craig Washington.

27. Immediately thereafter, Plaintiff's defense counsel filed a motion to expunge Plaintiff's arrest record for disorderly conduct that is pending at this time.

28. Plaintiff did not commit any offenses against the laws of the Commonwealth of Pennsylvania, the United States or the City of Philadelphia or engage in any conduct which justified the actions of the Defendants.

29. The unlawful arrest, search, threat and/or use of unreasonable force in this case were the direct result of Defendants' pattern, practice and custom of subjecting citizens such as Plaintiff to unreasonable threat of and/or use of force, arrest and prosecution in the absence of probable cause.

30. The Defendant Police Officers acted willfully, deliberately, maliciously or with reckless disregard of Plaintiff's constitutional and statutory rights.

31. As a direct and proximate result of the actions of all Defendants named herein, Plaintiff suffered and continues to suffer physical and psychological harm, pain and suffering, injury to his professional reputation and political reputation in his community, some or all of which may be permanent as well as financial losses.

32. Defendants engaged in the aforesaid conduct for the purpose of violating Plaintiff's constitutional rights by subjecting him to denial of right to speak out against unlawful police conduct, unreasonable threat of force, unreasonable use of force, unlawful arrest, unlawful search, malicious prosecution and severely chilling Plaintiff's right to assemble and engage in political speech.

## FISRT CAUSE OF ACTION

## FEDERAL CIVIL RIGHTS VIOLATIONS

33. Plaintiff incorporates by reference paragraphs 1-32 as though fully set forth herein.

34. As a direct and proximate result of all Defendants conduct, committed under color of state law, Plaintiff was denied his right to speak out against unlawful police conduct, unreasonable threat of force, unreasonable use of force, unlawful arrest, unlawful search, malicious prosecution, to be secure in his person and property, the due process of law and chilling of right to assemble and engage in political speech. As a result, Plaintiff suffered and continues to suffer harm and violation of his right under the law and Constitution of the United States, in particular the First, Fourth and Fourteenth Amendments thereof and 42 U.S.C.A. §1983.

35. As a direct and proximate result of the acts of all Defendants, Plaintiff sustained physical trauma and injuries, emotional harm, loss of liberty, irreparable damage to his professional and political reputation and financial loses, all to his detriment and harm.

36. Defendant City of Philadelphia has encouraged, tolerated, ratified and has been deliberately indifferent to the following patterns, practices and customs and to the need for more or different training, supervision, investigation or discipline in the areas of:

   a. The threat and/or use of unreasonable force, excessive force, unlawful search and unlawful arrest by police officers;

   b. The proper use of police powers, including threat and/or use of unreasonable force, excessive force, unlawful search, unlawful arrest, malicious prosecutions, violations of citizens free speech rights, particularly in connection with perceived challenges to police authority;

   c. The monitoring of officers whom it knew or should have known were suffering from emotional and/or psychological problems that impaired their ability to function as officers;

   d. The failure to identify and take remedial or disciplinary action against police officers who were the subject of prior civilian or internal complaints of misconduct;

   e. Police officers' use of their status as police officers to employ the threat of and/or use of excessive force, unlawful search, unlawful arrest or to achieve ends not reasonably related to their police duties; and

   f. The failure of police officers to follow established policies, procedures, directives, and instructions regarding the use of force and arrest powers under circumstances as presented herein.

37. The City of Philadelphia failed to properly sanction or discipline officers, who are aware of and conceal and/or aid and abet violations of constitutional rights of citizens by other Philadelphia Police Officers, thereby causing and encouraging Philadelphia Police, including Defendant Police Officers in this case, to violate the rights of citizens such as Plaintiff.

38. Defendants have by the above described actions deprived Plaintiff of rights secured by the First, Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C.A. §1983.

## SECOND CAUSE OF ACTION
## SUPPLEMENTAL STATE CLAIMS

39. Plaintiff incorporates by reference paragraphs 1-38 as though fully set forth herein.

40. The acts and conduct of the Defendant Police Officers in this cause of action constitute assault, battery, unlawful search, unlawful arrest, false imprisonment, malicious prosecution, intentional infliction of emotional distress, defamation of character, false light invasion of privacy, injurious falsehood, conspiracy, negligence, gross negligence, negligent misrepresentation, negligent hiring, training, supervision and retention under the laws of the Commonwealth of Pennsylvania, and this Court has supplemental jurisdiction to hear and adjudicate these claims.

WHEREFORE, Plaintiff requests the following relief:

    a. Compensatory damages;

    b. Punitive damages;

    c. Reasonable attorney fees and costs;

    d. Such other and further relief as appears reasonable and just; and

    e. A jury trial as to each Defendant and as to each count.

Respectfully Submitted By:

*[signature]*

Edward V. Reeves, Esquire
Plaintiff Pro Se
Attorney ID No. 65799
174 Middletown Blvd., P.O Box 338
Langhorne, Pennsylvania 19047
e-mail: reeveslawoffice@verizon.net
215-396-7730